UNITED STATES POSTAL Service

First-Class Mail
Postage & Fees Paid
USPS
Permit No.

Sender: Please print your name, address, and ZIP+4 in this box

Karen Kaplan
Paralegal
Segerstrom, Rogers, Barshak & Cohen, P.C.
101 Merrimac Street, 9th Floor
Boston, MA 02116

Redux

# EXHIBIT 2

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS<br>(PHENTERMINE, FENFLURAMINE,<br>DEXFENFLURAMINE) PRODUCTS<br>LIABILITY LITIGATION | : | MDL DOCKET NO. 1203 |
| | : | |
| THIS DOCUMENT RELATES TO: | : | |
| | : | |
| AUDREY ALEXANDER v. WYETH, et al. | : | CIVIL ACTION NO. 03-20206 |
| IDA HAYNES v. WYETH, et al. | : | CIVIL ACTION NO. 03-20143 |
| RUTH HIGGINBOTTOM v. WYETH, et al. | : | CIVIL ACTION NO. 03-20142 |
| THOMAS JARRELL v. WYETH, et al. | : | CIVIL ACTION NO. 03-20144 |
| CYNTHIA KANODE v. WYETH, et al. | : | CIVIL ACTION NO. 03-20145 |
| LINDA TRISVAN v. WYETH, et al. | : | CIVIL ACTION NO. 03-20141 |

MEMORANDUM AND PRETRIAL ORDER NO. 3230

Bartle, J.                                      January 29, 2004

Before the court are the motions of class members
Audrey Alexander, Ida Haynes, Ruth Higginbottom, Thomas Jarrell,
Cynthia Kanode, and Linda Trisvan to remand to the appropriate
Virginia state courts their actions against defendants Wyeth,[1]
the physicians who have prescribed Wyeth's diet drugs Pondimin
and/or Redux for them, the physicians' respective practice
groups, and John Does 1-3 -- anonymous detail persons and

---

1.  Wyeth was previously known as American Home Products
Corporation ("AHP").

marketing representatives of Wyeth.[2]  The state court actions
were captioned:  <u>Audrey Alexander v. Wyeth, et al.</u>, No. CL03-
023905-00 (Va. Cir. Ct. Lynchburg filed Feb. 24, 2003); <u>Ida
Haynes v. Wyeth, et al.</u>, No. LP-2596-1 (Va. Cir. Ct. Richmond
filed Oct. 30, 2002); <u>Ruth Higginbottom v. Wyeth, et al.</u>, No. LP-
2564-1 (Va. Cir. Ct. Richmond filed Oct. 25, 2002); <u>Thomas
Jarrell v. Wyeth, et al.</u>, No. LP-2664-4 (Va. Cir. Ct. Richmond
filed Nov. 7, 2002); <u>Cynthia Kanode v. Wyeth, et al.</u>, No. LP-
2577-3 (Va. Cir. Ct. Richmond filed Oct. 25, 2002); <u>Linda Trisvan
v. Wyeth, et al.</u>, No. CL024996 (Va. Cir. Ct. Greensville filed
Oct. 28, 2002).

        The plaintiffs in these actions have exercised their
right of back-end opt-out under the Nationwide Class Action
Settlement Agreement ("Settlement Agreement") in <u>Brown v.
American Home Products Corporation</u>, CIV.A. No. 99-20593 (E.D. Pa.
Aug. 28, 2000) ("Pretrial Order ("PTO") No. 1415"), which
encompassed persons who ingested Wyeth's diet drugs Pondimin and
Redux.  <u>See</u> <u>e.g.</u>, Settlement Agreement at § IV(A),(B), and
(D)(4).  Under the Settlement Agreement, those who have exercised
a back-end opt-out may sue Wyeth for compensatory damages in the
tort system rather than obtain benefits from the AHP settlement
trust.  Unlike initial opt-outs, these plaintiffs were class

_____

2.  Plaintiffs Ruth Higginbottom, Cynthia Kanode, and Linda
Trisvan have also brought claims against Interneuron
Pharmaceuticals, Inc. ("Interneuron"), the Massachusetts-based
pharmaceutical company that promoted Redux.  Because plaintiffs
do not assert the joinder of Interneuron as a ground for remand,
we need not address plaintiffs' claims against Interneuron.

members at the time of the approval of the class action settlement and continue to be so even though they now have separate lawsuits pending.

These six plaintiffs are all represented by the same counsel. Their motions for remand are before the undersigned as the transferee judge in MDL 1203, the mass tort litigation involving Wyeth's diet drugs commonly known as fen-phen. No federal claim for relief is alleged. Because these motions present nearly identical legal and factual issues, we will address them together.

I.

In brief summary, plaintiffs, all residents of the Commonwealth of Virginia, filed suit for injuries sustained as a result of their use of the diet drugs known as Pondimin and/or Redux. The defendant Wyeth, the manufacturer of Pondimin and Redux, is a party of diverse citizenship from the plaintiffs.[3] The defendant physicians[4] who have prescribed Pondimin and/or

---

3. Plaintiffs in their original state court pleadings claim that Wyeth is also a non-diverse defendant. Wyeth responds, and we agree, that at all relevant times, Wyeth was and still is a citizen of Delaware, where it is incorporated, and of New Jersey, where its principal place of business is located. See Notice of Removal at ¶ 6 (citing affidavit of John Alivernini, Assistant Secretary of Wyeth-Ayerst Laboratories). Plaintiffs provide no evidence to the contrary.

4. Specifically, plaintiffs have brought claims against the following physicians and their practice groups: Audrey Alexander claims that Thomas W. Eppes, Jr., M.D. and Central Virginia Family Physicians, Inc. prescribed Pondimin for her; Ida Haynes claims that Vanessa O. Johnson, M.D. and U.S. Medical Weight Loss Centers prescribed Pondimin for her; Ruth Higginbottom claims that Eric Joel DeMaria, M.D. prescribed Pondimin for her; Thomas
(continued...)

Redux for plaintiffs are residents of Virginia while the

defendant physicians' respective practice groups also have their

principal places of practice there.   Finally, plaintiffs aver

that the John Does 1-3, fictitious detail persons and marketing

representatives, are adult citizens of Virginia.

Plaintiffs originally filed their motions for judgment[5]

in the Virginia state courts between October 2002 and February

2003, more than five years after fen-phen was withdrawn from the

market in September, 1997.   Wyeth timely removed the actions to

the several United States District Courts in Virginia.[6]   The

Virginia federal courts deferred ruling on plaintiffs' remand

---

4. (...continued)
Jarrell claims that James C. Barr, M.D. and Virginia Physicians,
Inc. prescribed Redux for him; Cynthia Kanode claims that John R.
Partridge, M.D., Corinne N. Tuckey-Larus, M.D., and Virginia
Physicians for Women, Ltd. prescribed Pondimin, Redux, and/or
Phentermine for her; and Linda Trisvan claims that Thomas Walker,
M.D. prescribed Redux for her.

5.   An action at law before a Virginia Circuit Court is commenced
by the filing of a "motion for judgment".   See Va. Sup. Ct. R.
3:3 (2003).

6.   The specific date and place of plaintiffs' filings of motions
for judgment and Wyeth's removal are as follows:   Audrey
Alexander filed on February 24, 2003 in the Circuit Court for the
City of Lynchburg, Virginia, and Wyeth removed this action to the
United States District Court for the Western District of Virginia
on March 19, 2003.   Ida Haynes, Ruth Higginbottom, Thomas
Jarrell, and Cynthia Kanode filed respectively on October 30,
2002, October 25, 2002, November 7, 2002, and October 25, 2002,
all in the Circuit Court for the City of Richmond, Virginia, and
Wyeth removed these actions to the United States District Court
for the Eastern District of Virginia between November 12 and
November 14, 2002.   Linda Trisvan instituted suit on October 28,
2002 in the Circuit Court for the County of Greensville,
Virginia, and Wyeth removed this action to the United States
District Court for the Eastern District of Virginia on
November 13, 2002.

-4-

motions, and the cases were then transferred to this court as part of MDL 1203.

The plaintiffs maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Wyeth counters that the non-diverse physicians and physicians' practice groups were fraudulently joined because the applicable two-year statute of limitations bars plaintiffs' claims against these non-diverse defendants.[7] See VA. CODE ANN. § 8.01-243(A) (West 2003). Thus, Wyeth argues, plaintiffs' claims against the non-diverse defendants should be disregarded for purposes of determining diversity of citizenship of the parties. Plaintiffs respond that the statute of limitations has not expired because they discovered their injuries less than two years prior to filing their motions for judgment against the non-diverse defendants.

II.

Under the federal removal statute, " ... any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or defendants, to the district court .... " 28 U.S.C. § 1441(a). Federal district courts have original jurisdiction over all civil actions between citizens of different

---

7. The statute of limitations is not an issue in plaintiffs' claims against Wyeth, which has waived its right to assert the statute of limitations defense in return for the plaintiffs giving up their right to sue Wyeth for "punitive, exemplary, or multiple damages." Settlement Agreement § IV.D.3.c; see PTO No. 2625 and PTO No. 2680.

states if the amount in controversy exceeds $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a)(1). Complete diversity, of course, is required. State Farm Fire & Cas. Co. v. Tashire, 386 U.S. 523, 530-31 (1967). If an action originally instituted in a state court could have been brought in federal court pursuant to diversity jurisdiction, the defendants may remove it to federal court provided certain procedures are followed and certain conditions met. 28 U.S.C. §§ 1441 and 1446. Similarly, if the federal court subsequently determines that it does not have subject matter jurisdiction over a removed action, it must remand the action to the state court where it originated. 28 U.S.C. § 1447(c). A plaintiff or a defendant may seek to remand the case, or the court may do so on its own motion. Am. Fire & Cas. Co. v. Finn, 341 U.S. 6, 16-19 (1951); 16 Moore's Federal Practice, § 107.41[1][b][i] (Matthew Bender 3d ed.); see also Moses v. Ski Shawnee, Inc., 2000 WL 1053568, at *2 (E.D. Pa. July 31, 2000).

The presence of a party fraudulently joined cannot defeat removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921). Under our Court of Appeals' decision in Boyer v. Snap-on Tools Corporation, 913 F.2d 108, 111 (3d Cir. 1990), joinder is fraudulent "where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment."

-6-

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Ikon Office Solutions, Inc. Secs. Litig., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). As discussed above, we must decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 935 F.2d at 111.

We recognize that the burden on Wyeth to establish fraudulent joinder is a heavy one. See Wilson, 257 U.S. at 111. While we "must resolve all contested issues of substantive fact in favor of plaintiff," we do not take this to mean we must blindly accept whatever the party seeking remand may say no matter how incredible or how contrary to the overwhelming weight of the evidence. Id. We are also cognizant that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987). The Supreme Court made it clear in Wilson that if a plaintiff contests a defendant's assertion that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. Wilson, 257 U.S. at 98. We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that the complaint

-7-

states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (citation omitted). We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than that permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also Gaul v. Neurocare Diagnostic, Inc., No. 02-CV-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 1, 2003). In other words, simply because a claim against a party may ultimately be dismissed for failure to state a claim does not necessarily mean that the party was fraudulently joined. The test is whether this court thinks there is a "reasonable basis" for finding the claim to be colorable, that is, whether it is "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852.

III.

The key issue for present purposes is whether the prescribing physicians and their respective practice groups, all purportedly Virginia citizens, were fraudulently joined as defendants for the purpose of destroying diversity of citizenship and preventing removal. Plaintiffs have brought claims for medical negligence against all of these non-diverse defendants.

Wyeth argues that plaintiffs' motions for judgment do not state colorable claims against these defendants because plaintiffs' claims are barred by the Virginia statute of

-8-

limitations. It reads in pertinent part that "every action for personal injuries, whatever the theory of recovery, and every action for damages resulting from fraud, shall be brought within two years after the cause of action accrues." VA. CODE ANN. § 8.01-243(A). The Virginia Code further provides that "[i]n every action for which a limitation period is prescribed, the right of action shall be deemed to accrue and the prescribed limitation period shall begin to run from the date the injury is sustained in the case of injury to the person." VA. CODE ANN. § 8.01-230 (West 2003). Virginia courts have found that the injury is deemed to occur and the statute of limitations begins to run whenever any injury, however slight, is sustained. <u>St. George v. Pariser</u>, 484 S.E.2d 888, 889 (Va. 1997) (citation omitted). Moreover, even if a plaintiff suffers substantial effects from the injury only at a later date, the statute begins to run when the injury is first incurred. <u>Lo v. Burke</u>, 455 S.E.2d 9, 13 (Va. 1995).

Unlike some states that have adopted discovery rules, "Virginia law does not calculate statute of limitations in personal injury from the date of diagnosis." <u>Wade v. Danek Medical Inc.</u>, 5 F. Supp. 2d 379, 382 (E.D. Va. 1998) (citations omitted). Instead, "a cause of action can accrue before a disease ... manifests itself by symptoms, since it is the onset of the disease itself that triggers the running of the limitation period." <u>Hollingsworth v. Shenandoah Med. Imaging, Inc.</u>, 1996 WL 1065478, at *5 (Va. Cir. Ct. Jan. 18, 1996) (citation omitted).

Under Virginia law, a cause of action accrues when all essential elements are present. Locke v. Johns-Manville Corp., 275 S.E.2d 900, 904 (Va. 1981). Here, where the plaintiffs claim medical negligence, the cause of action accrues when (1) the defendants have a legal obligation to the plaintiffs, (2) the defendants violate or breach that duty, and (3) harm or damage occurs as a proximate result of the breach or violation. See id. Accordingly, the statue of limitations begins to run when there is injury to the plaintiffs, "without which no cause of action would come into existence." Id.

The crucial issue we must resolve is the time when the plaintiffs were first injured. See Locke, 275 S.E.2d at 905. Wyeth claims that the last possible date on which plaintiffs could have sustained injuries was September 15, 1997, or shortly thereafter, when fen-phen was pulled from the market. Plaintiffs, on the other hand, contend that their respective injuries did not accrue until they were diagnosed with various heart problems within the past two years.[8] To determine when

_____

8. Plaintiffs, in their motions for judgment, aver that their injuries are as follows: Audrey Alexander claims that an echocardiogram in May, 2002 reveals moderate mitral regurgitation as a result of her usage of Pondimin; Ida Haynes maintains that an echocardiogram in March, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of her usage of Pondimin; Ruth Higginbottom claims that an echocardiogram in July, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of her usage of Pondimin; Thomas Jarrell asserts that he became FDA positive (moderate or greater mitral regurgitation) within the past two years as a result of his usage of Redux; Cynthia Kanode claims that an echocardiogram in July, 2002 reveals moderate mitral regurgitation with left atrium enlargement as a result of
(continued...)

-10-

plaintiffs' alleged injuries occurred, it is necessary to examine the relevant medical evidence. See id. "The 'time plaintiff was hurt' is to be established from available competent evidence, produced by a plaintiff or a defendant, that pinpoints the precise date of injury with a reasonable degree of medical certainty." Id. Because Wyeth claims that plaintiffs' claims are barred by the statute of limitations, it "bears the burden of proving the date on which the injury was sustained with a reasonable degree of medical certainty." St. George, 484 S.E.2d at 890. Wyeth is "not required to establish as a matter of law the exact date that the injury was first sustained; [it] need only to establish that it was more probable than not that it occurred more than two years prior to the filing of suit." Wade, 5 F. Supp. 2d at 383.   To support their position that their injuries occurred within two years of filing their motions for judgment, plaintiffs each submit an affidavit from either Dr. Emeki Nkadi or Dr. Peter S. Ro, board certified cardiologists, which states that "within a reasonable degree of medical probability and certainty, ... the plaintiff in this action sustained the injury to her heart that is the basis of this lawsuit within two years prior to the filing of this suit," Nkadi Decls. at ¶ 5, or "that the plaintiff in this action was injured

_____

8.(...continued)
her usage of Pondimin, Redux, and/or Phentermine; and Linda
Trisvan maintains that an echocardiogram in July, 2002 reveals
moderate aortic regurgitation as a result of her usage of Redux.

-11-

and became FDA+ within two years prior to the filing of this
suit." Ro Decl. at ¶ 5.[9]

Wyeth, on the other hand, points out that Judge
Louis C. Bechtle,[10] in PTO No. 1415, determined that Pondimin and
Redux did not cause latent heart valve injuries but that the
injury occurred at or near the time of last use.[11]  See PTO
No. 1415, Brown v. American Home Products Corporation, CIV.A. No.
99-20593 (E.D. Pa. Aug. 28, 2000).  After a full hearing, Judge
Bechtle found:

> Pondimin and Redux were withdrawn from the
> market in September 1997 accompanied by an
> unprecedented amount of publicity which
> effectively warned diet drug users that they
> may have developed valvular lesions which
> could be detected through non-invasive
> echocardiograms.  Also, these lesions are not
> latent.  If they are going to occur, they are
> going to occur during drug use (or shortly
> thereafter) and be demonstrable on
> echocardiogram.

PTO No. 1415 at 41.  In reaching this conclusion, Judge Bechtle
considered a number of studies that tracked former Pondimin
and/or Redux patients for a number of years to find that "there
was no emergence of new disease after some latency period."  Id.

---

9.  Plaintiff Thomas Jarrell submitted an affidavit from Dr. Ro.
The rest of the plaintiffs submitted an affidavit from Dr. Nkadi.

10.  Judge Bechtle was the original MDL 1203 judge who presided
over the class action settlement in Brown.  He retired on
June 30, 2001.

11.  Plaintiff Cynthia Kanode claims damages resulting from
Redux, Pondimin, and Phentermine, "either individually or in
combination."  Kanode Mot. for J. at ¶ 18.  Because Judge Bechtle
determined in PTO No. 1415 that the ingestion of Phentermine did
not cause damage, we need not address Ms. Kanode's allegations of
damages resulting from Phentermine.

at 106-07.  In addition, Judge Bechtle relied upon the experts
who testified in the case, all of whom agreed that Pondimin,
Redux, and the fen-phen combination "do not cause latent valvular
regurgitation" and "that there is no evidence of significant
progression among such patients after they cease taking the
drugs." Id. at 108.

        Importantly, class counsel, whom this court determined
adequately represented all class members including plaintiffs
here, had an opportunity but did not object to the contentions or
the finding of "no latency." Judge Bechtle found that those who
did object ("objectors") "presented no evidence from any study to
support the contrary view that [heart disease] is either latent
or that it progresses in most former patients." PTO No. 1415 at
107. Judge Bechtle carefully analyzed the studies cited by the
objectors and determined that the studies did not support the
objectors' argument for latency.[12] Specifically, one study cited
by the objectors found that "the prevalence and severity of [diet
drug] associated [heart problems] fifteen years after exposure is
similar to published reports of patients with recent exposure,
suggesting a lack of significant regression or progression of
[heart problems] over time." PTO No. 1415 at 129. Another study
cited by the objectors similarly noted that there does not appear
to be a progression of diet drug related heart problems.  Id.
The "competent medical evidence," as presented by Wyeth and

_____

12.  Judge Bechtle reviewed the studies of Eichelberger and
Fischer.  See PTO No. 1415 at 129 (citing Ex. P-118; Ex. P-119).

-13-

reviewed in detail by Judge Bechtle in PTO No. 1415, establishes "with a reasonable degree of medical certainty" that the diet drugs Pondimin and Redux do not create latent injuries.  <u>Locke</u>, 275 S.E.2d at 905.

Wyeth contends that the principle of collateral estoppel, that is issue preclusion, prevents the plaintiffs from relitigating the question when class members first suffered injuries from Pondimin and Redux.  Collateral estoppel bars the relitigation of an issue which has already been tried between the same parties or their privies.  It applies when "(1) the issue sought to be precluded [is] the same as that involved in the prior action; (2) that issue [was] actually litigated; (3) it [was] determined by a final and valid judgment; and (4) the determination [was] essential to the prior judgment."  <u>Nat'l R.R.</u> <u>Passenger Corp. v. Pennsylvania Public Util. Comm'n</u>, 342 F.3d 242, 252 (3d Cir. 2003) (citation omitted).

Here, the plaintiffs are class members and were thus parties to the Settlement Agreement.  The issue of latency was actually litigated in the fairness hearing and is the same issue that the plaintiffs are now raising to defeat the bar of the statute of limitations.  Judge Bechtle's determination of no latency, that is that class members' injuries occurred within a short time after ingesting fen-phen, was an essential finding, for it directly affected the adequacy of class representation.  <u>See</u> PTO No. 1415 at 104-08.  Finally, PTO No. 1415, in which Judge Bechtle approved the Settlement Agreement, is a final and

-14-

valid judgment, upheld on appeal.  Thus, plaintiffs are
collaterally estopped from relitigating the issue of latency
through the affidavits of Dr. Ro and Dr. Nkadi.

Based on the record in this nationwide class action as
set forth in PTO No. 1415, we find that plaintiffs' injuries were
sustained and the cause of action accrued, at the latest, shortly
after September 15, 1997, when fen-phen was withdrawn from the
market.  Plaintiffs' motions for judgment were filed in the
Virginia state courts over five years after September 1997 and
thus over five years after their respective physicians prescribed
these drugs.  Accordingly, there is "no reasonable basis in fact
or colorable ground" that plaintiffs' motions for judgment
against the defendant physicians and their practice groups were
timely.  <u>Boyer</u>, 913 F.2d at 111.

IV.

Plaintiffs also bring claims against John Does 1-3 --
anonymous detail persons and marketing representatives of Wyeth
whom plaintiffs believe to be citizens of Virginia.  Plaintiffs
appear to join John Does 1-3 in an effort to defeat diversity.
However, the removal statute, in relevant part, provides that
"the citizenship of defendants sued under fictitious names shall
be disregarded."  28 U.S.C. § 1441(a).  Thus, for the purposes of
determining whether complete diversity exists so that these
actions may remain in federal court, the citizenship of John Does
1-3 is irrelevant.

-15-

V.

Finally, we turn to the issue of whether a statute of limitations defense may be considered in support of a fraudulent joinder claim. We previously answered this question in the affirmative in PTO No. 2710 in <u>Price v. American Home Products</u>, CIV.A. No. 02-20229 (E.D. Pa. Jan. 17, 2003) and PTO No. 3207 in <u>Ross v. Wyeth, et al.</u>, CIV.A. No. 03-20362 (E.D. Pa. Jan. 12, 2004), which are also part of the nationwide diet drug litigation. Because we have previously ruled on the same legal issue, we need not revisit it here. Instead, we refer the parties to our prior analysis of this issue. <u>See</u> <u>e.g.</u>, PTO No. 3207 at 11-12.

We find that Wyeth has met its burden of proving that the statute of limitations defense "unquestionably" precludes plaintiffs from obtaining relief from their respective physicians and the physicians' practice groups. <u>See</u> <u>Gaul</u>, <u>supra</u>, 2003 WL 230800, at *3. Plaintiffs' attempts to join their physicians as defendants are improper efforts to prevent Wyeth from exercising its statutory right under 28 U.S.C. § 1441 to remove cases based on diversity of citizenship to federal court. Because Wyeth has met its heavy burden of establishing fraudulent joinder, we will deny plaintiffs' motions to remand these actions to the several Virginia state courts and dismiss plaintiffs' claims against defendant physicians, their respective practice groups, and John Does 1-3. Plaintiffs' motions for costs are without merit and will be denied.

-16-

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (PHENTERMINE, FENFLURAMINE, DEXFENFLURAMINE) PRODUCTS LIABILITY LITIGATION | : : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : : | |

AUDREY ALEXANDER v. WYETH, et al.    :    CIVIL ACTION NO. 03-20206

IDA HAYNES v. WYETH, et al.    :    CIVIL ACTION NO. 03-20143

RUTH HIGGINBOTTOM v. WYETH, et al. :    CIVIL ACTION NO. 03-20142

THOMAS JARRELL v. WYETH, et al.    :    CIVIL ACTION NO. 03-20144

CYNTHIA KANODE v. WYETH, et al.    :    CIVIL ACTION NO. 03-20145

LINDA TRISVAN v. WYETH, et al.    :    CIVIL ACTION NO. 03-20141

## PRETRIAL ORDER NO. _____

        AND NOW, this 29th day of January, 2004, for the
reasons set forth in the accompanying Memorandum, it is hereby
ORDERED that:

        (1)   the motion of plaintiff Audrey Alexander in
Audrey Alexander v. Wyeth, et al., CIV.A. No. 03-20206 (E.D. Pa.)
to remand to the Circuit Court for the City of Lynchburg,
Virginia is DENIED;

        (2)   the claims against defendants Thomas W. Eppes,
Jr., M.D., Central Virginia Family Physicians, Inc., and John
Does 1-3 in Audrey Alexander v. Wyeth, et al. are DISMISSED;

(3)   the motion of plaintiff Ida Haynes in <u>Ida Haynes v. Wyeth, et al.</u>, CIV.A. No. 03-20143 (E.D. Pa.) to remand to the Circuit Court for the City of Richmond, Virginia is DENIED;

(4)   the claims against defendants Vanessa O. Johnson, M.D., U.S. Medical Weight Loss Centers, and John Does 1-3 in <u>Ida Haynes v. Wyeth, et al.</u> are DISMISSED;

(5)   the motion of plaintiff Ruth Higginbottom in <u>Ruth Higginbottom v. Wyeth, et al.</u>, CIV.A. No. 03-20142 (E.D. Pa.) to remand to the Circuit Court for the City of Richmond, Virginia is DENIED;

(6)   the claims against defendants Eric Joel DeMaria, M.D. and John Does 1-3 in <u>Ruth Higginbottom v. Wyeth, et al.</u> are DISMISSED;

(7)   the motion of plaintiff Thomas Jarrell in <u>Thomas Jarrell v. Wyeth, et al.</u>, CIV.A. No. 03-20144 (E.D. Pa.) to remand to the Circuit Court for the City of Richmond, Virginia is DENIED;

(8)   the claims against defendants James C. Barr, M.D., Virginia Physicians, Inc., and John Does 1-3 in <u>Thomas Jarrell v. Wyeth, et al.</u> are DISMISSED;

(9)   the motion of plaintiff Cynthia Kanode in <u>Cynthia Kanode v. Wyeth, et al.</u>, CIV.A. No. 03-20145 (E.D. Pa.) to remand to the Circuit Court for the City of Richmond, Virginia is DENIED;

(10)   the claims against defendants John R. Partridge, M.D., Corinne N. Tuckey-Larus, M.D., Virginia Physicians for

Women, Ltd., and John Does 1-3 in <u>Cynthia Kanode v. Wyeth, et al.</u> are DISMISSED;

     (11)  the motion of plaintiff Linda Trisvan in <u>Linda Trisvan v. Wyeth, et al.</u>, CIV.A. No. 03-20141 (E.D. Pa.) to remand to the Circuit Court for the County of Greensville, Virginia is DENIED;

     (12)  the claims against defendants Thomas Walker, M.D. and John Does 1-3 in <u>Linda Trisvan v. Wyeth, et al.</u> are DISMISSED; and

     (13)  the motions of all plaintiffs for costs pursuant to 28 U.S.C. § 1447(c) are DENIED.

     BY THE COURT:

                                          J.

# EXHIBIT 3

JUN-13-2003  15:51      US DISTRICT COURT EDPA                                P.14/14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS              :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,    :
DEXFENFLURAMINE) PRODUCTS      :
LIABILITY LITIGATION           :

THIS DOCUMENT RELATES TO:      :
                               :            FILED  JUN 12 2003
FREDDA RAINEY                  :
                               :
          v.                   :
                               :
WYETH, et al.                  :    CIVIL ACTION NO. 03-20128

PRETRIAL ORDER NO. 2886

AND NOW, this 12th day of June, 2003, for the reasons

set forth in the accompanying Memorandum, it is hereby ORDERED

that the motions of plaintiff Fredda Rainey and defendant Luis

Franco to remand this action to the Circuit Court of Jefferson

County, Alabama (Bessemer Division), are DENIED.

BY THE COURT:

_Harvey Bartle_ ___
                                                      J.

ENTERED
JUN 13 2003
CLERK OF COURT

TOTAL P.14

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

IN RE: DIET DRUGS              :    MDL DOCKET NO. 1203
(PHENTERMINE, FENFLURAMINE,    :
DEXFENFLURAMINE) PRODUCTS      :
LIABILITY LITIGATION           :
                               :         FILED JUN 12 2003
THIS DOCUMENT RELATES TO:      :
                               :
FREDDA RAINEY                  :
                               :
          v.                   :
                               :
WYETH, et al.                  :    CIVIL ACTION NO. 03-20128

MEMORANDUM AND PRETRIAL ORDER NO. 2886

Bartle, J.                                      June 12, 2003

          Before the court are the motions of plaintiff Fredda

Rainey and defendant Dr. Luis Franco to remand this action to the

Circuit Court of Jefferson County, Alabama.  The motions are

before the undersigned as the transferee judge in MDL 1203, the

mass tort litigation involving the diet drugs commonly known as

Fen-Phen.  No federal claim for relief is alleged.

          In brief summary, plaintiff filed suit for injuries

sustained as a result of her use of Pondimin,[1] one of the weight

loss drugs.  The complaint names as defendants: (1) Wyeth,[2] the

_____

1.  Pondimin was the trade name under which Wyeth marketed
fenfluramine, half of the diet drug cocktail known as "Fen-Phen."
Dexfenfluramine, containing the same active ingredient as
fenfluramine, was also marketed by Wyeth, and was known under the
trade name Redux.

2.  Wyeth was previously known as American Home Products
                                                  (continued...)

manufacturer of Pondimin and a party of diverse citizenship from the plaintiff; (2) nine Alabama sales representatives of Wyeth who plaintiff alleges marketed and promoted Pondimin;[3] and (3) an Alabama doctor, Dr. Luis Franco, who prescribed Pondimin to the plaintiff.

Plaintiff originally filed her complaint in the state court on November 5, 2002, more than five years after Pondimin was withdrawn from the market in September, 1997. On December 6, 2002, Wyeth removed the action to the United States District Court for the Northern District of Alabama. Thereafter, plaintiff and defendant Dr. Franco separately moved to remand under 28 U.S.C. § 1446. The Alabama federal court deferred ruling on plaintiff's motion, and the case was thereafter transferred to this court as part of MDL 1203.

The plaintiff and defendant Franco maintain that remand is appropriate because complete diversity does not exist as required under 28 U.S.C. § 1332(a). Defendant Wyeth counters that the non-diverse physician and sales representatives were fraudulently joined and thus should be disregarded for purposes of determining diversity of citizenship of the parties.

---

(...continued)
Corporation.

3. Although plaintiff alleges that sales representative Neil Blanton was an Alabama resident, in his affidavit he states he is actually a citizen of Florida.

-2-

I.

Under the federal removal statute, "any civil action
brought in a state court of which the district courts of the
United States have original jurisdiction, may be removed by the
defendant or defendants, to the district court." 28 U.S.C.
§ 1441(a). Federal district courts have original jurisdiction
over all civil actions between citizens of different states if
the amount in controversy exceeds $75,000, exclusive of interest
and costs. 28 U.S.C. § 1332(a)(1). Complete diversity, of
course, is required. State Farm Fire & Cas. Co. v. Tashire, 386
U.S. 523, 530-31 (1967). If an action originally instituted in a
state court could have been brought in federal court pursuant to
diversity jurisdiction, the defendants may remove it to federal
court provided certain procedures are followed and certain
conditions met. 28 U.S.C. §§ 1441 and 1446. Similarly, if the
federal court subsequently determines that it does not have
subject matter jurisdiction over a removed action, it must remand
the action to the state court where it originated. 28 U.S.C.
§ 1447(c). A plaintiff or a defendant may seek to remand the
case, or the court may do so on its own motion. American Fire &
Cas. Co. v. Finn, 341 U.S. 6, 16-19 (1951); 16 Moore's Federal
Practice, § 107.41[1][b][i] (Matthew Bender 3d ed.). See also
Moses v. Ski Shawnee, Inc., 2000 WL 1053568 at *2 (E.D. Pa.
July 31, 2000).

Under our Court of Appeals decision in Boyer v. Snap-on
Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990), joinder is

-3-

fraudulent 'where there is no reasonable basis in fact or colorable ground supporting the claim against the joined defendant, or no real intention in good faith to prosecute the action against the defendant or seek a joint judgment.' The presence of a party fraudulently joined cannot defeat removal. Wilson v. Republic Iron & Steel Co., 257 U.S. 92, 97 (1921).

As an MDL court sitting within the Third Circuit, we must apply our Court of Appeals' fraudulent joinder standard. See In re Korean Airlines Disaster, 829 F.2d 1171, 1174 (D.C. Cir. 1987); In re Ikon Office Solutions, Inc. Secs. Litig., 86 F. Supp. 2d 481, 485 (E.D. Pa. 2000). As discussed above, we must decide whether there is a "reasonable basis in fact or colorable ground supporting the claim against the joined defendant." Boyer, 935 F.2d at 111.

We recognize that the burden on Wyeth to establish fraudulent joinder is a heavy one. Wilson, 257 U.S. at 111. While we "must resolve all contested issues of substantive fact in favor of plaintiff," we do not take this to mean we must blindly accept whatever plaintiff or the defendant seeking remand may say no matter how incredible or how contrary to the overwhelming weight of the evidence. Id. We are also cognizant that the removal statute must be construed narrowly, and "all doubts should be resolved in favor of remand." Steel Valley Auth. v. Union Switch and Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987) (citation omitted). The Supreme Court made it clear in Wilson that if a plaintiff contests a defendant's assertion

-4-

that joinder of another defendant was a sham to defeat removal, the District Court must determine the facts from the evidence. Wilson, 257 U.S. at 98. We are not to decide automatically in favor of remand simply because some facts may be said to be in dispute.

On matters of substantive law, "[i]f there is even a possibility that a state court would find that the complaint states a cause of action against any one of the resident defendants, the federal court must find that joinder was proper and remand the case to state court." Boyer, 913 F.2d at 111 (citation omitted). We are mindful that our inquiry into Wyeth's claim of fraudulent joinder is less searching than that permissible when a party seeks to dismiss a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure. Batoff v. State Farm Ins. Co., 977 F.2d 848, 852 (3d Cir. 1992); see also Gaul v. Neurocare Diagnostic, Inc., No. 02-CV-2135, 2003 WL 230800, at *2 (E.D. Pa. Jan. 3, 2003). In other words, simply because a claim against a party may ultimately be dismissed for failure to state a claim does not necessarily mean that the party was fraudulently joined. The test is whether this court thinks there is a "reasonable basis" for finding the claim to be colorable, that is, whether it is "wholly insubstantial and frivolous." Batoff, 977 F.2d at 852.

## II.

We first address defendant Wyeth's contention that Dr. Luis Franco, the prescribing physician and a citizen of Alabama,

-5-

was fraudulently joined solely for the purpose of destroying diversity of citizenship and preventing removal.  Plaintiff has brought claims against him for medical negligence, as well as general claims for fraud and fraudulent concealment.

Wyeth argues that the complaint does not state a colorable claim against Dr. Franco because it is time-barred under the Alabama Medical Liability Act ("AMLA"), which states in relevant part:

> All actions against physicians, surgeons, dentists, medical institutions or other health care providers ... <u>must be commenced within two years</u> ... and not afterwards; provided, that if the cause of action is not discovered and could not reasonably have been discovered within such period, then the action may be commenced within six months from the date of such discovery or the date of discovery of facts which would reasonably lead to such discovery, whichever is earlier, provided further, that in no event may the action be commenced more than four years after such act ....

Ala. Code § 6-5-482(a) (emphasis added).  This statute governs all claims by a patient against her physician that arise from the physician-patient relationship, <u>Collins v. Ashurst</u>, 821 So. 2d 173, 175 (Ala. 2001), and sets forth a two year limitations period.  Ala. Code § 6-5-482(a).  Pondimin was withdrawn from the market in September, 1997, while plaintiff's lawsuit was not filed until November, 2002.  Plaintiff does not deny that more than two years have elapsed between the time when plaintiff ingested the diet drug and the time when the doctor was sued.  Rather, she first argues that the two year statute of limitations does not bar the action because of the Alabama discovery rule,

-6-

which allows a plaintiff to file suit within six months after the discovery of a medical injury.

The limitations period for a medical malpractice action under the AMLA begins to run upon the accrual of a cause of action, that is, when the act complained of results in legal injury to the plaintiff. McCormick v. Adarholt, 293 F.3d 1254, 1260 (11th Cir. 2002) (applying Alabama law). See also Grabert v. Lightfoot, 571 So. 2d 293, 294 (Ala. 1990). The key inquiry in determining the accrual date of a claim is not the date of the doctor's negligent act, or the date on which the plaintiff became aware of the degeneration, but the time when she first suffered the ill effect of the wrongful act. Ex parte Sonnier, 707 So. 2d 635, 637 (Ala. 1997). Since there is no latency period between ingestion of Pondimin and any injury,[4] plaintiff's injury at the latest commenced, and thus the limitations period began to run, shortly after Pondimin went off the market in late 1997. Based on the two-year statute of limitations alone, plaintiff would have needed to file her complaint by late 1999. Clearly, her November, 2002 filing is well beyond this deadline.

---

4. Judge Louis C. Bechtle, who presided over the fairness hearing in connection with the approval of the Nationwide Class Action Settlement, found that there is no latency period between the time of diet drug use and injury. In his August 20, 2000 Order approving settlement, Judge Bechtle stated "[t]he absence of a latency period between ingestion of [the diet drug] and the development of clinically detectable [heart disease] is ... confirmed by a number of studies ..., [each of which finds] that there was no emergence of new disease after some latency period." Memorandum and Pretrial Order No. 1415 at 46 (Aug. 28, 2000).

However, as stated above, the discovery provision in Ala. Code § 6-5-482(a) modifies the AMLA's two year limitation and gives an additional six months to file a claim from the time of discovery or when it would have been reasonable to discover such injury. Plaintiff claims that she did not discover her injury until October, 2002, when she had an electrocardiogram ("EKG"). She therefore contends her action, filed a month later in November, 2002, falls within the six month safe harbor period.

We find that plaintiff's allegation that she did not discover her injury until October, 2002 has no reasonable basis in fact. Bover, 913 F.2d at 111. Plaintiff admitted knowledge of her injury in March, 2000. On a form ("Orange Form #1") signed by plaintiff on March 29, 2000 to exercise her right to opt out of the national diet drug Settlement, she was asked to respond to the following: "If you believe you have an adverse condition related to the use of Pondimin ..., please briefly describe your condition below." Plaintiff answered "yes." Directly below this question, right above where plaintiff signed and dated the form, it stated that plaintiff "had an opportunity to read the Official Court Notice transmitted to Class Members in connection with the nationwide Class Action Settlement." The Official Court Notice of the Nationwide Diet Drug Class Action Settlement contained a penalty provision for false claims specifying that "[a]ll Settlement Forms must be signed under penalties of perjury." By signing and dating the Orange Form #1, plaintiff swore that she knew of her injury as early as March,

-8-

2000. Yet, she did not initiate the suit within the six month
period allowed under the discovery provision of the AMLA.  Ala.
Code § 6-5-482(a).

The fact that plaintiff may not have known about the
seriousness of her injury in March, 2000 is inconsequential.  As
noted above, the limitation period "begins to run when the first
injury, however slight occurs, even though that injury may later
become greater or different."  Free v. Granger, 887 F.2d 1552,
1555-56 (11th Cir. 1989).  See also McCormick v. Aderholt, 293
F.3d 1254, 1260 (11th Cir. 2002).

Plaintiff relies upon this court's Memorandum and
Pretrial Order No. 2710 in Price v. American Home Products,
CIV.A. No. 02-20229 (E.D. Pa. Jan. 17, 2003).  However, that
decision does not support plaintiff's position.  In that case,
also part of the national diet drug litigation, we deemed Wyeth's
removal to have been improper and remanded.  Among other things,
the plaintiff there had not provided information on an Orange
Form akin to the information given by the plaintiff here.
Moreover, Price involved the law of the District of Columbia, not
the law of Alabama.

Alternatively, the plaintiff contends that she has
properly pleaded fraud and fraudulent concealment against the
doctor, and therefore those claims at least are not barred by the
statute of limitations.  Where there is fraud or concealment of
tortious conduct, the AMLA specifies that the statute of
limitations may be tolled "until the discovery by the aggrieved

-9-

party of the fact constituting the fraud, after which he must have two years within which to prosecute his action." Ala. Code §§ 6-2-3, 6-5-482(b). Plaintiff claims in her complaint that the doctor committed actionable fraud by "failing to adequately warn her of the dangers and side effects associated with Pondimin use ... knowingly concealing the dangers associated with the diet drug and failing to advise her to undergo a[n] ... [EKG]." She alleges she did not learn about the fraud until October, 2002 when an EKG revealed heart damage.

There is no reasonable basis in fact to accept the October, 2002 date. As discussed above, plaintiff had <u>actual</u> knowledge of the injuries in March, 2000. <u>Constant v. Wyeth</u>, No. 3:03-0052, slip op. at 9 (M.D. Tenn. April 9, 2003). Thus, her fraud claims against Dr. Franco do not support her quest for remand.

The plaintiff's claims against Dr. Franco are barred by the statute of limitations. There is no colorable ground to support the claims against him, <u>Boyer</u>, 913 F.2d at 111, and he is fraudulently joined. Thus, we need not reach the issue of whether plaintiff's claims are also barred by the language in the AMLA that provides that "in no event may the action be commenced" after four years. Ala. Code § 6-5-482(a).

III.

We next turn to Wyeth's contention that nine sales representatives were fraudulently joined - Joy Boozer, David Wurm, Michael Crawford, Neil Blanton, Sam Wright, Steven Sells,

-10-

Mitchell DeLoach, William Owen, and Karen Cunningham.  At least eight of them are Alabama citizens and thus non-diverse defendants.  Plaintiff has brought claims against the sales representatives, along with Wyeth, for their alleged fraudulent, negligent and/or wanton marketing, promotion, selling, and/or distribution of Pondimin.

We note first that there is no indication in the complaint that the plaintiff, or the plaintiff's physician Dr. Franco, received any drugs from the sales representative defendants.  In fact, according to an uncontested affidavit submitted by Dan J. Shepherd, the Zone Vice President of Wyeth's Southern Business Unit, no Wyeth sales representative ever promoted Pondimin.  Additional affidavits submitted by eight of the nine sales representative defendants further confirm that they never advertised, assembled, created, designed, detailed, distributed, labeled, made, manufactured, marketed, packaged, promoted, sold, sterilized, supplied or tested Pondimin, or trained anyone to do so, nor did they call or meet with Dr. Franco.[5]  Since Alabama law only holds corporate employees liable for wrongful actions in which they personally participate, plaintiff has no colorable claim against the sales representatives.  Ex Parte Charles Bell Pontiac-Buick-Cadillac-GMC, Inc., 496 So. 2d 774, 775 (Ala. 1986); Turner v. Hayes, 719 So. 2d 1184, 1188 (Ala. Civ. App. 1997).  In fact, in the

---

5.  No affidavit was submitted for defendant Crawford, who plaintiff has been unable to serve.  However, Mr. Shepherd states that Mr. Crawford similarly could not have promoted Pondimin.

-11-

complaint, plaintiff barely discusses the sales representatives except generally to aver their involvement in marketing and promoting Pondimin.  In her brief in support of the motion to remand, she does not even mention them.

Plaintiff has not provided a scintilla of evidence that the sales representative either promoted Pondimin generally or specifically to Dr. Franco.  Since she has no colorable claim against them, we therefore find that they too were fraudulently joined.

IV.

Accordingly, the motions of plaintiff and of defendant Franco[6] to remand to the state court of Alabama will be denied.

---

6.  Defendant Franco alternatively requests, seemingly as an afterthought, that this court sever the plaintiff's claims against him and remand these claims to state court.  However, Dr. Franco cites no authority for this proposition, and there does not appear to be consent by the parties to sever the claims against him.  Further, as this court has determined as a matter of law that Dr. Franco was fraudulently joined, we will not sever and remand a non-colorable claim.

~12~