"Fen-Phen Maker to Pay Billions in Settlement of Diet-Injury Cases."[165]

The Settlement also received front-page attention in *The Wall Street Journal*.[166]

      67. News of the Settlement also was reported in local media throughout the country. Television news reports in various regions carried the story.[167] In addition, newspapers in a wide variety of states, such as

---

[165] David J. Morrow, *Fen-Phen Maker to Pay Billions in Settlement of Diet-Injury Cases*, N.Y. TIMES, Oct. 8, 1999, at A1.

[166] *What's News*, WALL ST. J., Oct. 8, 1999, at A1.

[167] *See, e.g., Newscenter 5 Eyeopener* (WCVB-TV Oct. 8, 1999); *22 News First Look* (WWLP-TV Oct. 8, 1999); *News 40 This Morning* (WGGB-TV Oct. 8, 1999); *7 News at Noon* (WHDH-TV Oct. 8, 1999); *7 News Today in New England* (WHDH-TV Oct. 8, 1999); *News 4 This Morning* (WBZ-TV Oct. 8, 1999); *22 News* (WWLP-TV Oct. 8, 1999); *Eyewitness News at 5:30* (WFSB-TV Oct. 7, 1999); *Newschannel 8 at 5:30* (WTNH-TV Oct. 7, 1999) *The Evening Edition* (News 12 Connecticut Oct. 7, 1999); *Eyewitness News This Morning* (WFSB-TV Oct. 8, 1999); *Connecticut News Today* (WVIT-TV Oct. 8, 1999); *News Channel 8* (WTNH-TV Oct. 8, 1999); *12 News This Morning* (WPRI-TV Oct. 8, 1999); *Channel 8 at 5:30* (WMTW-TV Oct. 7, 1999); *News Center* (WCSH-TV Oct. 7, 1999); *News Center* (WCSH-TV Oct. 8, 1999); *NewsChannel 13 at Noon* (WGME-TV Oct. 8, 1999); *NewsChannel 13 Daybreak* (WGME-TV Oct. 8, 1999); *Channel 19 Ten O'Clock News* (WXIX-TV Oct. 7, 1999); *Channel 12 News at 5* (WKRC-TV Oct. 7, 1999); *Five O'Clock News* (WCPO-TV Oct. 7, 1999); *Five O'Clock News* (WLWT-TV Oct. 7, 1999); *Newchannel 5: Live on Five* (WEWS-TV Oct. 7, 1999); *Eyewitness News at 5* (WBNS-TV Oct. 7, 1999); *Six News at Five* (WSYX-TV Oct. 7, 1999); *News 22* (WKEF-TV Oct. 7, 1999); *NewsCenter 7 at 5:00* (WHIO-TV Oct. 7, 1999); *2 News at 5:00* (WDTN-TV Oct. 7, 1999); *NewsCenter 7 Daybreak* (WHIO-TV Oct. 7, 1999); *Channel 3 News Saturday* (WKYC-TV Oct. 9, 1999); *Eight is News at Ten* (WJW-TV Oct. 9, 1999); *News 19 This Morning* (WOIO-TV Oct. 8, 1999); *6 News at 6:00* (WSYX-TV Oct. 8, 1999); *Eight is News This Morning* (WJW-TV Oct. 8, 1999); *Channel 3 Morning News* (WKYC-TV Oct. 8, 1999); *Channel 3 News at Noon* (WKYC-TV Oct. 8, 1999); *Newschannel 5 Midday* (WEWS-TV Oct. 8, 1999); *Good Morning Cleveland* (WEWS-TV Oct. 8, 1999); *Eyewitness News at 5:00* (WBNS-TV Oct. 8, 1999); *Channel 9 Early Bird Special* (WCPO-TV Oct. 8, 1999); *News 5 Today* (WLWT-TV Oct. 8, 1999); *13 Action News Good Morning* (WTVG-TV Oct. 8, 1999); *21 Action News at Noon* (WFMJ-TV Oct. 8, 1999); *NewsCenter 7 Daybreak* (WHIO-TV Oct. 8, 1999); *News 4 at Noon* (WCMH-TV Oct. 8, 1999); *ABC 25 After* (WJXX-TV Oct. 7, 1999) *Good Morning Jacksonville* (WTLV-TV Oct. 7, 1999); *ABC 25 Nightcast* (WJXX-TV Oct. 7, 1999); *4 Eyewitness News Live at 5:30* (WJXT-TV Oct. 7, 1999); *4 Eyewitness News Nightbeat* (WJXT-TV Oct. 7, 1999); *Eyewitness News at 5:30* (WFTV-TV Oct. 7, 1999); *Newscenter 6 Nightbeat* (WKMG-TV Oct. 7, 1999); *The 10:00 News* (WKCF-TV Oct. 7, 1999); *News 12 at 5:30* (WPEC-TV Oct. 7, 1999); *4 Eyewitness News Daybreak* (WPLG-TV Oct. 8, 1999); *Today in Florida* (WSVN-TV Oct. 8, 1999);;

[Footnote continued on next page]

California, Florida, Texas, Ohio, North Carolina, Massachusetts, and

Louisiana, all reported that Wyeth would pay "billions" to settle diet-drug

lawsuits.[168]

---

[Footnote continued from previous page]
*Good Morning Jacksonville* (WTLV-TV Oct. 8, 1999); *4 Eyewitness News at Noon* (WJXT-TV Oct. 8, 1999),; *ABC 25 Today* (WJXX-TV Oct. 8, 1999); *News Channel 2 Early Sunrise* (WESH-TV Oct. 8, 1999); *CBS News 4 This Morning* (WFOR-TV Oct. 8, 1999); *3 in the Morning* (WEAR-TV Oct. 8, 1999); *Fox News at 10:00* (WOFL-TV Oct. 8, 1999); *Good Day Tampa Bay at 5:30* (WTVT-TV Oct. 8, 1999); *Today in South Florida* (WTVJ-TV Oct. 8, 1999).

[168] *See, e.g., AHP to Pay Up to $4.8B to Settle Fen-Phen Suits*, BOSTON GLOBE, Oct. 8, 1999, at C3; *Fen-Phen Marketer to Pay $3.75B to Settle Suits*, BOSTON HERALD, Oct. 8, 1999, at 7; Amy Westfeldt, *Fen-Phen Users Win $4.83B*, PATRIOT LEDGER (Quincy, Mass.), Oct. 8, 1999; *Fen-Phen Maker Agrees to Pay $4.83B*, TELEGRAM & GAZETTE (Worcester, Mass.), Oct. 8, 1999; Amy Westfeldt, *$4.83 Billion Settles Fen-Phen Lawsuits*, UNION-NEWS (Springfield, Mass.), Oct. 8, 1999, at A1; Amy Westfeldt, *$4.83 Billion Settlement Reached in Fen-Phen Suit*, HARTFORD COURANT, Oct. 8, 1999, at A10; Amy Westfeldt, *American Home Products Reaches $3.75B Diet Drug Settlement Over Fen-Phen*, ADVOCATE (Stamford, Conn.), Oct. 8, 1999; Amy Westfeldt, *Fen-Phen Maker Settled Product Liability Case*, BRISTOL PRESS (Bristol, Conn.), Oct. 8, 1999; Amy Westfeldt, *Fen-Phen Diet Drug Maker Agrees to $4.83B Settlement*, CONNECTICUT POST (Bridgeport, Conn.), Oct. 8, 1999; Amy Westfeldt, *Fen-Phen Maker Agrees to $4.83 Billion Settlement*, CALL (Woonsocket, R.I.), Oct. 8, 1999; *Fen-Phen Maker Agrees to Pay $4.8 Billion*, PROVIDENCE JOURNAL, Oct. 8, 1999; Amy Westfeldt, *Diet Drug Liability Deal Made*, BURLINGTON FREE PRESS; *Diet Drug Lawsuit Settled*, RUTLAND DAILY HERALD (Rutland, Vt.), Oct. 8, 1999; *Fen-Phen Maker to Pay $3.75 Billion Settlement*, BANGOR DAILY NEWS, Oct. 8, 1999; *Drug Firm Settles Fen-Phen Claims for $3.75 Billion*, PORTLAND (Me.) PRESS HERALD, Oct. 8, 1999; Amy Westfeldt, *American Home Products Pays Up*, TIMES RECORD (Brunswick, Me.), Oct. 8, 1999; *Fen-Phen Maker Agrees to $4.83 Billion Settlement*, BERLIN REPORTER (Berlin, N.H.), Oct. 8, 1999; *Drug Company Agrees to $4.83 Billion Settlement*, CONCORD MONITOR (Concord, N.H.), Oct. 8, 1999; Amy Westfeldt, *American Home Products Pays Up to $4.83B in Diet Drug Settlement*, CITIZEN (Laconia, N.H.), Oct. 8, 1999; *Fen-Phen Maker Set to Pay $4B*, PORTSMOUTH HERALD (Portsmouth, N.H.), Oct. 8, 1999; Phil Galewitz, *Diet Drug Maker Settles Lawsuits for $3.75B*, TELEGRAPH (Nashua, N.H.), Oct. 8, 1999; *Drug Company Offers to Pay $4.83 Billion in Fen-Phen Suits*, UNION LEADER (Manchester, N.H.), Oct. 8, 1999, at A10; Sharon Bernstein and Paul Jacobs, *Fen-Phen Claims Lead to Settlement*, VALLEY NEWS (West Lebanon, N.H.), Oct. 8, 1999; Sharon Bernstein & Paul Jacobs, *$4.83 Billion Offered to Settle Fen-Phen Claims; Pharmaceuticals: American Home Products Will Compensate Thousands of Patients Who May Have Suffered Heart Damage*, LOS ANGELES TIMES, Oct. 8, 1999, at C1; *Diet-Drug Maker Agrees to Pay Up to $4.83 Billion*, ORLANDO SENTINEL, Oct. 8, 1999, at A3,; *Fen-Phen Marketer to Pay $3.75B to Settle Suits*, BOSTON HERALD, Oct. 8, 1999, at 7; *Firm Agrees to Settle Fen-Phen Suits; $3.75 Billion is Set Aside For Claims*, NEW ORLEANS TIMES-PICAYUNE, Oct. 8, 1999, at C1; Andy Geller, *Diet-Drug Maker to Pay Fen-Phen Victims $4.8B*, N.Y. Post, Oct. 8, 1999, at 4; Ron Nissimov, *$4.83 Billion Offered in Fen-Phen Suit; Lawyers Say Deal Could Unravel*, HOUSTON CHRON., Oct. 8, 1999, at 3; Amy Westfeldt,

[Footnote continued on next page]

68. In addition to this widespread national and local publicity concerning the Settlement, the MDL Court approved an elaborate notice program—running from November 1999 to February 2000—that employed sophisticated media techniques designed to reach all diet drug users.[169] That campaign used television messages that were broadcast 106 times over a period of five weeks on network television, and were broadcast 781 times for six consecutive weeks on various cable networks.[170] The text of the television message warned viewers about possible heart valve problems from diet drugs:

---

[Footnote continued from previous page]
*Company to Pay $4.83 Billion in Fen-Phen Settlement*, SAN ANTONIO EXPRESS-NEWS, Oct. 8, 1999, at 01A; Ben L. Kaufman and Susan Vela, *$4.83B Fen-Phen Deal Proposed*, CINCINNATI ENQUIRER, Oct. 8, 1999, at A1; Amy Westfeldt, *Diet Drug Firm to Pay $4.83 Billion*, CLEVELAND PLAIN DEALER, Oct. 8, 1999, at 1A; *Settlement to Cost Diet-Drug Maker up to $4.83 Billion*, COLUMBUS DISPATCH, Oct. 8, 1999, at 1B; *Maker to Pay $4.8 Billion Over Use of Fen-Phen*, BLADE (Toledo, Ohio), Oct. 8, 1999; *Fen-Phen Maker Settles for $4.83B*, CINCINNATI POST, Oct. 8, 1999; Amy Westfeldt, *Diet Drug Maker to Pay $4.83 Billion to Settle Cases*, DAYTON DAILY NEWS, Oct. 8, 1999; Amy Westfeldt, *Company Settles Fen-Phen Lawsuit*, REPOSITORY (Canton, Ohio), Oct. 8, 1999; *Drug Maker OKs Settlement*, TIMES LEADER (Martins Ferry, Ohio), Oct. 8, 1999; Amy Westfeldt, *Fen-Phen Payout May Top $4 Billion*, ATLANTA CONST., Oct. 8, 1999, at 1A; Amy Westfeldt, *Fen-Phen Settlement is Largest Ever Offered in a Liability Case*, CHARLOTTE OBSERVER, at 4A, Oct. 8, 1999; *Makers of Diet Drug Agree to $3.75 Billion Settlement*, TAMPA TRIBUNE, Oct. 8, 1999, at 4BF; Amy Westfeldt, *Fen-Phen Settlement is $3.75B*, FORT LAUDERDALE SUN-SENTINEL, Oct. 8, 1999, at 1D; *Drugmaker Agrees to Settle Fen-Phen Suits for $4.8-Billion*, ST. PETERSBURG TIMES, Oct. 8, 1999, at 1A; *Diet-Drug Maker Agrees to Pay Up to $4.83 Billion*, ORLANDO SENTINEL, Oct. 8, 1999, at A3; *Fen-Phen Claims Produce $4.83 Billion Settlement*, PENSACOLA NEWS-JOURNAL, Oct. 8, 1999; *Fen-Phen Suit is Settled for $4.83 Billion*, PALM BEACH POST, Oct. 8, 1999; Phil Galewitz, *Diet-Drug Maker Settles for $3.75 Billion*, TALLAHASSEE DEMOCRAT, Oct. 8, 1999; *Fen-Phen Nearly Settled*, BOSTON HERALD, at 17, Nov. 20, 19996; *Judge Gives Initial OK to Fen-Phen Pact*, LOS ANGELES TIMES, at C4, Nov. 24, 1999; *Preliminary Approval For Fen-Phen Settlement*, SAN FRANCISCO CHRON., Nov. 24, 1999.

[169] *In re Diet Drugs*, 2000 WL 1222042, at *35.

[170] *See id.*

> If you took the diet drug combination known as
> FenPhen or the diet drugs Pondimin or Redux, you
> may have heart valve problems and not know it.
> As a result of the proposed class action settlement,
> you could be eligible for free medical testing and
> compensation. But you must act promptly. You
> must decide whether to participate in this
> settlement by March 30, 2000. If you do nothing,
> your legal rights will be affected. Call 1-800-386-
> 2070 today.[171]

69. A summary notice of the Settlement was also published in the print media throughout the United States.[172] This notice appeared repeatedly in numerous and varied magazines, including *Parade, People, Time, Ladies Home Journal, Redbook,* and *Good Housekeeping.*[173] Banner ads also were developed for use on the Internet.[174] The summary notice was further published in several national and seventy-seven local newspapers, as well as in a variety of publications targeted to healthcare providers and pharmacists.[175] In addition, notice was mailed to all pharmacists and doctors who were likely to have prescribed Pondimin or Redux or treated patients for complications resulting from their use. That package included, among other things, a "counter card" which pharmacists and physicians could

---

[171] *See id.* at *35 n.11.

[172] *See id.; see also* Official Court Notice: Attention Anyone Who Took "Fen-Phen," Pondimin and/or Redux.

[173] *See In re Diet Drugs,* 2000 WL 1222042, at *35 & n.12.

[174] *See id.* at *35.

[175] *Id.* at *35-36.

display to alert patients about the existence of the Settlement, with a toll-free number and website to contact for further information.[176]

70. As the MDL Court concluded, "[t]he media program . . . was highly successful," in part because it was "greatly enhanced by the enormous publicity that has surrounding the diet drugs involved in this litigation and the publicity of this Settlement."[177] In fact, according to a media analysis, 97% of women between the ages of 25 and 54 viewed one or more forms of televised or printed notice an average of 10 times, and almost 80% of women in the same age group were exposed to the televised or printed notice a minimum of five times.[178]

*    *    *

I, the undersigned, declare under penalty of perjury that the facts set forth herein concerning the publicity with respect to the health risks associated with diet drugs are true and correct to the best of my knowledge, information and belief.

Sharon L. Taylor
Executed on April 29, 2004

---

[176] *Id.* at *36.

[177] *Id.* at *36.

[178] *Id.* at *36 n.16.

# EXHIBIT 6

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/ Fenfluramine/Dexfenfluramine) PRODUCTS LIABILITY LITIGATION | : : : : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : | |
| JOYCE ANN ALLEN, et al. v. WYETH, et al. | : : : : | CIVIL ACTION NO. 03-20310 |
| BRENDA BARNETT, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20239 |
| SARAH BROOKS, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20318 |
| LORETTA GRANT, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20330 |
| DAVID PICKERING, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20302 |
| BETTY RAMSHUR, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20333 |
| ROY SIMMONS, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20319 |
| TRINA WATERS, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20323 |
| ANTHONY WATSON, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20296 |
| DOROTHY WINTERS, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20170 |
| PAUL WOODCOCK, et al. v. WYETH, et al. | : : : | CIVIL ACTION NO. 03-20273 |

JAMIE WOODS, et al.                :
            v.                     :        CIVIL ACTION NO. 03-20272
WYETH, et al.                      :
_____:

## PRETRIAL ORDER NO. 3305

AND NOW, this 24th day of February, 2004, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1)  the motion of plaintiffs in Joyce Allen, et al. v. Wyeth, et al., CIV.A. No. 03-20310 (E.D. Pa.) to remand to the Circuit Court of Copiah County, Mississippi is DENIED;

(2)  all claims in Allen against defendants John Long, M.D. and Fred J. McDonnel, M.D. are DISMISSED;

(3)  the motion of plaintiffs in Brenda Barnett, et al. v. Wyeth, et al., CIV.A. No. 03-20239 (E.D. Pa.) to remand to the Circuit Court of Sunflower County, Mississippi is DENIED;

(4)  all claims in Barnett against defendants Walter H. Rose, M.D., Joseph F. Roberts, M.D., Howard D. Clark, M.D., William A. Middleton, M.D., Ray A. Montalvo, M.D., Lloyd G. Hopkins, M.D., Alfred McNair, M.D., Charles J. Gruich, M.D., Magdi Wassef, M.D., Robert B. Townes, M.D., Charles D. Guess, M.D., Scott Jordan, M.D., Irvin H. Cronin, M.D., Michelle E. Rivlin, M.D., William Nichols, M.D., Richard H. Corson, M.D., Barry Gillespie, M.D., Terry Jackson, M.D., Jasper D. Moore, M.D., Paul Odom, M.D., W.M. Harris, M.D., and Patrick G. McLain, M.D. are DISMISSED;

(5)   the motion of plaintiffs in <u>Sarah Brooks, et al.</u>
<u>v. Wyeth, et al.</u>, CIV.A. No. 03-20318 (E.D. Pa.) to remand to the
Circuit Court of Sharkey County, Mississippi is DENIED;

(6)   all claims in <u>Brooks</u> against defendants Kurt
Kooyer, M.D., Virginia Joyce Vittor, M.D., Calvin Hull, M.D., Jim
Roberts, M.D., Dan W. Jackson, D.O., Glenn F. Morris, M.D., Randy
Easterling, M.D., Douglas L. Conner, M.D., Andrea Phillips, M.D.,
S.A. Kumah, M.D., Andrew Murphy, M.D., Charles F. Brock, M.D.,
Eric D. Harding, M.D., S.J. Creekmore, M.D., F. Lee Neal, M.D.,
Marcus L. Hogan, M.D., Terry Jackson, M.D., and Patrick G.
McLain, M.D. are DISMISSED;

(7)   the motion of plaintiffs in <u>Loretta Grant, et al.</u>
<u>v. Wyeth, et al.</u>, CIV.A. No. 03-20330 (E.D. Pa.) to remand to the
Circuit Court of Holmes County, Mississippi is DENIED;

(8)   all claims in <u>Grant</u> against defendants John G.
Downer, M.D., Michael Braden, M.D., Herbert Hicks, M.D., Stephen
A. Tramill, D.O., Daniel Edney, M.D., H. Wade Westbrook, M.D.,
Hilton E. O'Neal, M.D., Edward O'Brien, M.D., James Riser, M.D.,
Keith Rushing, M.D., Mark B. Stanley, M.D., Edsel F. Stewart,
M.D., Gerald A. Turner, M.D., Jasper D. McDuffie, M.D., Patrick
G. McClain, M.D., William Munn, M.D., David Richardson, M.D.,
Howard Clark, M.D., Don Gibson, M.D., Harold J. Wheeler, M.D.,
Joseph Roberts, M.D., and James Leak, M.D. are DISMISSED;

(9)  the motion of plaintiffs in <u>David Pickering, et al. v. Wyeth, et al.</u>, CIV.A. No. 03-20302 (E.D. Pa.) to remand to the Circuit Court of Jones County, Mississippi is DENIED;

(10)  all claims in <u>Pickering</u> against defendant Terry Pitts, M.D. are DISMISSED;

(11)  the motion of plaintiffs in <u>Betty Ramshur, et al. v. Wyeth, et al.</u>, CIV.A. No. 03-20333 (E.D. Pa.) to remand to the Circuit Court of Jones County, Mississippi is DENIED;

(12)  all claims in <u>Ramshur</u> against defendant Hugh Stancill, M.D. are DISMISSED;

(13)  the motion of plaintiffs in <u>Roy Simmons, et al. v. Wyeth, et al.</u>, CIV.A. No. 03-20319 (E.D. Pa.) to remand to the Circuit Court of Claiborne County, Mississippi is DENIED;

(14)  all claims in <u>Simmons</u> against defendants Mark B. Stanley, M.D. and David M. Headley, M.D. are DISMISSED;

(15)  the motion of plaintiffs in <u>Trina Waters, et al. v. Wyeth, et al.</u>, CIV.A. No. 03-20323 (E.D. Pa.) to remand to the Circuit Court of Holmes County, Mississippi is DENIED;

(16)  all claims in <u>Waters</u> against defendants John G. Downer, M.D., Anita Tribble, M.D., Jasper Moore, M.D., T.B. Parson, M.D., G.A. Carmichael, M.D., Calvin Hull, M.D., David L. Richardson, M.D., Edward Bryant, M.D., Dwilia South, M.D., Dorothy Gillespie, M.D., Edsel Stewart, M.D., Wayne Johnson, M.D., Patrick G. McLain, M.D., Howard Clark, M.D., Ronnye Purvis, M.D., Don Blackwood, M.D., and Charles Ozborn, M.D. are DISMISSED;

(17)   the motion of defendant Edward Bryant, M.D. in
Waters (E.D. Pa.) to dismiss Trina Waters' claims (Doc. #11) is
DENIED as moot;

(18)   the motion of plaintiffs in Anthony Watson, et
al. v. Wyeth, et al., CIV.A. No. 03-20296 (E.D. Pa.) to remand to
the Circuit Court of Hinds County, Mississippi is DENIED;

(19)   all claims in Watson against defendants Ron
Lewis, M.D., Andrea Phillips, M.D., and Jasper D. Moore, M.D. are
DISMISSED;

(20)   the motion of plaintiffs in Dorothy Winters, et
al. v. Wyeth, et al., CIV.A. No. 03-20170 (E.D. Pa.) to remand to
the Circuit Court of Holmes County, Mississippi is DENIED;

(21)   all claims in Winters against S. Rao Rayuda,
M.D., Jasper Moore, M.D., John Downer, M.D., Michael O'Neal,
M.D., Keith Stanford, M.D., and Elias Abboud, M.D. are DISMISSED;

(22)   the motion of plaintiffs in Paul Woodcock, et al.
v. Wyeth, et al., CIV.A. No. 03-20273 (E.D. Pa.) to remand to the
Circuit Court of Humphreys County, Mississippi is DENIED;

(23)   all claims in Woodcock against Karen Mullen,
M.D., Richard Carter, M.D., Edward Holmes, M.D., Douglas Conner,
M.D., David Richardson, M.D., Elmertha Burton, M.D., Jonn Mann,
M.D., Maria Soriano, M.D., Kent Darsey, M.D., Patrick G. McLain,
M.D., Mack Gorton, M.D., Robert Jordan, M.D., Dennis Simms, M.D.,
Edsel Stewart, M.D., Michael O'Neal, M.D., Keith Lay, M.D., David
Webber, M.D., Don Gibson, M.D., Sam Fillingame, M.D., Howard
Clark, M.D., David Richardson, M.D., Richard Warren, M.D., Robert

-5-

Cooper, M.D., Stephen A. Tramill, D.O., David Clippinger, M.D.,
and Buford Lambert, M.D. are DISMISSED;

(24)  the motion of plaintiffs in Jamie Woods, et al v.
Wyeth, et al., CIV.A. No. 03-20272 (E.D. Pa.) to remand to the
Circuit Court of Sunflower County, Mississippi is DENIED; and

(25)  all claims in Woods against Howard Clark, M.D.,
Charles Borum, M.D., Patrick G. McLain, M.D., Bill Maddox, M.D.,
Obie McNair, M.D., Terry Lowe, M.D., Keith Stanford, M.D., Harold
Wheeler, M.D., Edgar Donahoe, M.D., Rafe Armstrong, M.D., H. Todd
Coulter, M.D., Keith R. Lay, M.D., Edmund Miller, M.D., Charles
McClees, M.D., David Richardson, M.D., William Middleton, M.D.,
Gloria Butler, M.D., Frank Wade, M.D., Jasper Moore, M.D., W.L.
Prichard, M.D., Virginia Vittor, M.D., F. Lee Neal, M.D., William
B. Lucas, M.D., W. Paul Wilcox, M.D., Ben Sanford, M.D., and
Margaret Powell, M.D. are DISMISSED.

BY THE COURT:

_Harvey Bartle_, J.

-6-

## IN THE UNITED STATES DISTRICT COURT
### FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| IN RE: DIET DRUGS (Phentermine/<br>Fenfluramine/Dexfenfluramine)<br>PRODUCTS LIABILITY LITIGATION | : | MDL DOCKET NO. 1203 |
| THIS DOCUMENT RELATES TO: | : | **FILED** FEB 2 4 2004 |
| JOYCE ANN ALLEN, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20310 |
| BRENDA BARNETT, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20239 |
| SARAH BROOKS, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20318 |
| LORETTA GRANT, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20330 |
| DAVID PICKERING, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20302 |
| BETTY RAMSHUR, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20333 |
| ROY SIMMONS, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20319 |
| TRINA WATERS, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20323 |
| ANTHONY WATSON, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20296 |
| DOROTHY WINTERS, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20170 |
| PAUL WOODCOCK, et al.<br>          v.<br>WYETH, et al. | : | CIVIL ACTION NO. 03-20273 |

**ENTERED**

FEB 2 5 2004

**CLERK OF COURT**

JAMIE WOODS, et al.                    :
                        v.             :    CIVIL ACTION NO. 03-20272
WYETH, et al.                          :
                                       :
_____:

## MEMORANDUM AND PRETRIAL ORDER NO. 3305

Bartle, J.                                      February 24, 2004

      Before the court are the motions of numerous class
members in twelve separate actions to remand to the appropriate
Mississippi state courts their actions against defendants Wyeth[1]
and the physicians who have prescribed Wyeth's diet drugs
Pondimin and/or Redux for them.  The state court actions were
captioned Joyce Ann Allen, et al. v. Wyeth, et al., (Miss. Cir.
Ct. Copiah County filed Nov. 1, 2002); Sarah Brooks, et al. v.
Wyeth, et al., (Miss. Cir. Ct. Sharkey County filed Nov. 6,
2002); Brenda Barnett, et al. v. Wyeth, et al., (Miss. Cir. Ct.
Sunflower County filed Nov. 6, 2002); Loretta Grant, et al. v.
Wyeth, et al., (Miss. Cir. Ct. Holmes County filed Nov. 5, 2002);
David Pickering, et al. v. Wyeth, et al., (Miss. Cir. Ct. Jones
County filed Nov. 6, 2002); Betty Ramshur, et al. v. Wyeth, et
al., (Miss. Cir. Ct. Jones County filed Nov. 6, 2002); Roy
Simmons, et al. v. Wyeth, et al., (Miss. Cir. Ct. Claiborne
County filed Nov. 1, 2002); Trina Waters, et al. v. Wyeth, et
al., (Miss. Cir. Ct. Holmes County filed Nov. 5, 2002); Anthony
Watson, et al. v. Wyeth, et al., (Miss. Cir. Ct. Hinds County
filed Nov. 15, 2002); Dorothy Winters, et al. v. Wyeth, et al.,

_____

1.  Wyeth was previously known as American Home Products
Corporation ("AHP").

-2-

(Miss. Cir. Ct. Holmes County filed June 21, 2002); <u>Paul Woodcock, et al. v. Wyeth, et al.</u>, (Miss. Cir. Ct. Humphreys County filed Nov. 5, 2002); and <u>Jamie Woods, et al. v. Wyeth, et al.</u>, (Miss. Cir. Ct. Sunflower County filed Nov. 5, 2002).

According to Wyeth, the plaintiffs in these actions have exercised their right of intermediate opt-out under the Nationwide Class Action Settlement Agreement ("Settlement Agreement") in <u>Brown v. American Home Products Corporation</u>, CIV. A. No. 99-20593 (E.D. Pa. Aug. 28, 2000) ("Pretrial Order ("PTO") No. 1415"), which encompassed persons who ingested Wyeth's diet drugs Pondimin and Redux.  <u>See e.g.</u>, Settlement Agreement at § IV(A), (B), and (D)(4).  Under the Settlement Agreement, those who have exercised an intermediate or back-end opt-out may sue Wyeth for compensatory damages in the tort system rather than obtain benefits from the AHP Settlement Trust. Unlike initial opt-outs, these plaintiffs were class members at the time of the approval of the class action settlement and continue to be so even though they now have separate lawsuits pending.

There are 256 plaintiffs in these twelve actions, and they are all represented by the same counsel.[2]  Their motions for remand are before the undersigned as the transferee judge in MDL 1203, the mass tort litigation involving Wyeth's diet drugs commonly known as fen-phen.  No federal claim for relief is

---

2.  Some plaintiffs are derivative claimants suing for loss of consortium.

-3-

alleged.  Because these motions present nearly identical legal
and factual issues, we will address them together.

I.

In brief summary, plaintiffs, all citizens of the state
of Mississippi, filed suits for injuries sustained as a result of
their use of the diet drugs known as Pondimin and/or Redux.  The
defendant Wyeth, the manufacturer of Pondimin and Redux, is a
party of diverse citizenship from the plaintiffs.  The defendant
physicians who prescribed Pondimin and/or Redux to plaintiffs are
alleged to be citizens of Mississippi.

Plaintiffs originally filed their complaints in
Mississippi Circuit Courts in June or November, 2002, more than
five years after fen-phen was withdrawn from the market in
September, 1997.  Wyeth timely removed the actions to the United
States District Court for the Southern District of Mississippi.
The Mississippi federal court deferred ruling on plaintiffs'
motions, and the cases were then transferred to this court as
part of MDL 1203.

The plaintiffs maintain that remand is appropriate
because complete diversity does not exist as required under
28 U.S.C. § 1332(a).  Wyeth counters that the non-diverse
physicians were fraudulently joined because the applicable two-
year statute of limitations bars plaintiffs' claims against these
non-diverse defendants.[3]  See MISS. CODE ANN. § 15-1-36 (West

_____

3.  The statute of limitations is not an issue in plaintiffs'
claims against Wyeth, which has waived its right to assert the
                                        (continued...)

-4-

2003). Thus, Wyeth argues, plaintiffs' claims against these non-diverse defendants should be disregarded for purposes of determining diversity of citizenship of the parties. Plaintiffs respond that the statute of limitations has not expired because they discovered their injuries less than two years prior to filing their motions for judgment against the non-diverse defendants.

II.

This court addressed the identical issues presented by plaintiffs' remand motions in PTO No. 3281 in <u>French, et al. v. Wyeth, et al.</u>, CIV. A. No. 03-20353 (E.D. Pa. Feb. 18, 2004), which is also part of the nationwide diet drug litigation. In <u>French</u>, we laid out in detail the standards for removal based on diversity jurisdiction and fraudulent joinder. <u>See</u> PTO No. 3281 at 2-4. Because we examined the same legal issues as they applied to nearly identical facts in <u>French</u>, we need not revisit them here.

III.

The key issue in these cases, as in <u>French</u>, is whether the prescribing physicians, all purportedly Mississippi citizens, were fraudulently joined as defendants for the purpose of destroying diversity of citizenship and preventing removal.

---

3.(...continued)
statute of limitations defense in return for the plaintiffs giving up their right to sue Wyeth for "punitive, exemplary, or multiple damages." Settlement Agreement § IV.D.3.c; <u>see</u> PTO No. 2625 and PTO No. 2680.

-5-

Plaintiffs have brought claims for medical negligence against all
of these non-diverse defendants.

Wyeth argues that plaintiffs' complaints do not state
colorable claims against these defendants because plaintiffs'
claims are barred by the Mississippi statute of limitations.  The
statute provides in relevant part:

> For any claim accruing on or before June 30,
> 1998, and except as otherwise provided in
> this section, no claim in tort may be brought
> against a licensed physician, osteopath,
> dentist, hospital, institution for the aged
> or infirm, nurse, pharmacist, podiatrist,
> optometrist or chiropractor for injuries or
> wrongful death arising out of the course of
> medical, surgical or other professional
> services unless it is filed <u>within two (2)</u>
> <u>years from the date the alleged act, omission</u>
> <u>or neglect shall or with reasonable diligence</u>
> <u>might have been first known or discovered.</u>

MISS. CODE ANN. § 15-1-36(1) (emphasis added).  For any claim
accruing on or after July 1, 1998, the statute of limitations is
the same for all relevant purposes.[4]

In <u>French</u>, we set forth the standard for when an action
"accrues" under Mississippi law.  <u>See</u> PTO No. 3281 at 6.  In
short, an action accrues when a patient can reasonably be held to
have knowledge of the injury itself, cause of injury, and the
conduct of the medical practitioner.  <u>Fortenberry v. Mem'l Hosp.</u>
<u>At Gulfport, Inc.</u>, 676 So.2d 252, 255 (Miss. 1996); <u>see also</u>

---

4.  The statute of limitations for claims accruing after July 1,
1998 adds tolling provisions for fraudulent concealment and
instances when a foreign object is left in a patient's body.  <u>See</u>
MISS. CODE ANN. § 15-1-36(2)(a).(b).  Both provisions require a
plaintiff to bring an action within two years of the time when
the alleged injury or fraud should have been discovered, and no
later than seven years after the alleged act of neglect.  <u>See</u> <u>id.</u>

-6-

_First Trust Nat'l Ass'n v. First Nat'l Bank of Commerce_, 220 F.3d
331, 336-37 (5th Cir. 2000); _In re Catfish Antitrust Litig._, 826
F. Supp. 1019, 1031 (N.D. Miss. 1993).

Plaintiffs contend that they brought their actions
within two years "from the date the alleged act ... with
reasonable diligence might have been first known or discovered."
MISS. CODE. ANN. § 15-1-36(1).  According to plaintiffs, they could
not have reasonably discovered their purported injuries until
their alleged heart problems were diagnosed after reviewing their
echocardiograms.  Plaintiffs assert that their diagnoses occurred
less than two years prior to filing their complaint.  Wyeth
counters that plaintiffs should have been on notice of their
stated injuries as a result of the widespread publicity
accompanying the withdrawal of the diet drugs from the market in
September, 1997.  Wyeth further contends that plaintiffs should
have known about their alleged injuries at the very latest in
March, 2000, after Wyeth's extensive publicity campaign.

This court also discussed in _French supra_, the massive
publicity in Mississippi and nationwide concerning the withdrawal
of the diet drugs from the market and their possible connection
to valvular heart disease.  _See_ PTO No. 3281 at 7-12.  We find
that here, as in _French_, plaintiffs have not established that
they discovered their alleged injuries less than two years prior
to bringing their lawsuits.  In light of this publicity,
plaintiffs, through the exercise of reasonable diligence, should
have discovered their alleged injuries at the very latest by

-7-

March, 2000.  However, their complaints were not filed until June
or November, 2002.  Thus, plaintiffs' claims against the in-state
physicians are clearly time barred, and Wyeth has established
that these in-state physicians are fraudulently joined.

     In response to Wyeth's contention that the statute of
limitations has lapsed for claims against in-state physician
defendants, thus barring all tort claims against in-state
physicians, plaintiffs cite Robinson v. Singing River Hospital,
732 So.2d 204 (Miss. 1999).  Plaintiffs rely on Robinson for the
proposition that the statute of limitations begins to run against
an in-state physician only when the plaintiff has knowledge of
his injury and the link between said injury and the in-state
physician's conduct.  In Robinson, the plaintiff received second
degree burns when heating pads were placed on his skin.  The
court determined that because the plaintiff was burned and
complained of his injury almost immediately, it was disingenuous
for him to assert that he was not aware of his injury until
another physician advised him that he was in fact injured.  The
court in Robinson found that "where the symptoms are not
immediately manifested, the cause of action does not accrue until
the [plaintiff] is aware or should be aware of his condition."
732 So.2d at 208 (citations omitted) (emphasis added).

     Similar to Robinson, the plaintiffs here allege that
they could not have been aware of their injury until the link
between their alleged injuries and the conduct of the in-state
physician was revealed after reviewing their echocardiograms.

-8-

Here, as in <u>French</u>, we will not entertain plaintiffs' argument
that any alleged diet drug related heart problems were latent.
<u>See</u> PTO No. 3281 at 12-13.  We also reject the notion that
plaintiffs could not reasonably have been aware of their stated
injuries until their echocardiograms.  As in <u>French</u>, we find that
plaintiffs can reasonably be held to have knowledge of their
injuries, the cause of their injuries and the conduct of their
prescribing physicians as early as September, 1997 and at the
latest by March, 2000.  Thus, their actions accrued and the
statute of limitations began to elapse at that time.  <u>See</u>
<u>Fortenberry</u>, 676 So.2d at 255.

V.

For the same reasons set forth in <u>French</u>, <u>supra</u>, Wyeth
has met its heavy burden of showing that the in-state physician
defendants are fraudulently joined.  Accordingly, we will deny
the motions of the plaintiffs to remand these actions to the
several Mississippi state courts and will dismiss the complaints
as to these physician defendants.

# EXHIBIT 7

Page 352

```
 1   SECOND JUDICIAL DISTRICT COURT

     COUNTY OF SANTA FE

 2   STATE OF NEW MEXICO

 3   NO:  D-0101-CV-2000-1387

 4   JOSEPHINE GARCIA,

 5                  Plaintiff,

 6    -vs-

 7   WYETH-AYERST LABORATORIES DIVISION OF AMERICAN HOME

     PRODUCTS CORPORATION, et al.,

 8

 9                  Defendants.

10

11                   VOLUME 3

12            TRANSCRIPT OF PROCEEDINGS

13         On the 27th day of January, 2003, at approximately

14   8:50 a.m., this matter came on for hearing on the

15   merits before HONORABLE JAMES A. HALL, Division II,

16   Judge of the First Judicial District, State of New

17   Mexico.

18         The Plaintiff, Josephine Garcia, appeared by Counsel

19   of Record, MARK J. CARUSO, Attorney at Law, 4302

20   Carlisle Boulevard, Northeast, Albuquerque, New

21   Mexico 87107, and MICHAEL J. MILLER, KENNETH SMITH,

22   NANCY ARMSTRONG, PETER MILLER, Attorneys at Law, 809

23   Cameron Street, Alexandria, Virginia 22314.

24         The Defendant, WYETH-AYERST LABORATORIES, appeared

25   by Counsel of Record, PETER BLEAKLEY and PETER
```

1    GROSSI, Attorneys at Law, 555 12th Street, Northwest,

2    Washington, D.C. 20004, and WALTER MELENDRES,

3    Attorney at Law, 325 Paseo de Peralta, Santa Fe, New

4    Mexico 87501, at which time the following proceedings

5    were had:

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

Josephine Garcia v. Wyeth-Ayerst                                    Volume 3, A.M. Session

Page 354

1                    I N D E X

2    EXAMINATION OF JOSEPHINE L. GARCIA

3    By Mr. Miller                                    362

4    By Mr. Bleakley                                  404

5    By Mr. Miller                                    435

6    EXAMINATION OF JULIA OLIJNYK-SELAH

7    By Mr. Miller

8    By Mr. Grossi

9    By Mr. Miller

10   Video testimony of Ronald Notvest

11   EXAMINATION OF JERRY GARCIA

12   By Mr. Miller

13   By Mr. Bleakley

14   By Mr. Miller

15   Video testimony of Carrie Smith-Cox

16         EXHIBITS MARKED OR FORMALLY IDENTIFIED

17   Exhibit 2 admitted                               359

18   Exhibit P-166.36 admitted

19   Exhibit D-1220 admitted

20   Exhibit D-1128 admitted

21

22

23

24

25

Page 355

```
 1                    P-R-O-C-E-E-D-I-N-G-S

 2                      January 27, 2003

 3    (In open court at 8:50 a.m.)

 4    (Mary A. Seal, certified court reporter.)

 5

 6           THE COURT:  We're back on the record in

 7    Garcia versus Wyeth, counsel and parties present.

 8    We are outside the presence of the jury for

 9    preliminary matters before continuing with evidence.

10    Preliminary matters for the plaintiff?

11           MR. MILLER:  No, Your Honor.

12           THE COURT:  For the defense?

13           MR. BLEAKLEY:  No, Your Honor.

14           THE COURT:  Okay.  I received some

15    additional mail this morning, I guess late Friday.

16    I only this morning received the designations

17    regarding Mr. Anaya, so I haven't looked at those

18    yet.  Are you planning on playing those immediately?

19    Or what's the plan?

20           MR. MILLER:  Not immediately, but after

21    the morning break.  There's very few objections.  I

22    think the Court could probably make pretty quick

23    work of it.  We are planning on calling Ms. Garcia

24    first, Roger Ilingworth, which the Court has had

25    over -- we're hoping the Court could rule on that
```

1    this morning so we could have that ready to go by

2    the time she's completed hers.

3            Then we're going to call hopefully

4    Mr. Anaya, which is very brief by deposition, and

5    then I said Roger Ilingworth, and then her husband,

6    Jerry Garcia.  And that will wrap up, I'm sure, the

7    morning.

8            THE COURT:  Okay.

9            MR. BLEAKLEY:  Your Honor, Jerry Garcia,

10   we were informed, was testifying tomorrow.  We are

11   not prepared to conduct cross-examination of

12   Mr. Garcia this morning.  The latest information we

13   had is he was tomorrow.

14           MR. MILLER:  Then that's fine.  If they

15   think they need another day to prepare, we'll call

16   him later.

17           MR. BLEAKLEY:  What about Ms. Olijnyk?

18           MR. MILLER:  Ms. Olijnyk is here and

19   testifying right after lunch.

20           THE COURT:  Let me do this.  Let me go

21   ahead and rule on the Ilingworth deposition

22   exceptions.  The Ilingworth ones.  That's who you

23   want to call next, right?

24           MR. MILLER:  Yes, yes.  And since we're

25   not going to call Mr. Garcia, you have already ruled

Page 357

```
 1    on Mr. Bathish.  That's about a 36-minute video.

 2              THE COURT:  Okay.  Let me go ahead and

 3    rule on the objections in the Ilingworth deposition.

 4              The first objection commences on page 35,

 5    line 22.  This objection is overruled.  Page 36,

 6    line 20, the objection is overruled.  Page 37, line

 7    19, the objection is overruled.  Page 38, line 1,

 8    the objection is overruled.  Page 39, line 7, the

 9    objection is overruled.  Page 39, line 22, the

10    objection is overruled.  Page 41, line 24, the

11    objection is overruled.  Page 43, line 5, the

12    objection is overruled.  Page 47, line 15, the

13    objection is sustained.  Page 48, line 5, the

14    objection is sustained.  That goes on for several

15    pages.  Page 55, line 23, the objection is

16    sustained, again going on for several pages.  Page

17    64, line 17, the objection is sustained.  Page 65,

18    line 23, the objection is sustained.  Page 78, line

19    3, the objection is sustained.  Page 78, line 9, the

20    objection is sustained.  Page 145, line 13, the

21    objection is overruled.  147, line 25, the objection

22    is overruled.  162, line 8, the objection is

23    overruled.  And 162, line 20, the objection is

24    overruled.

25              I have a question about what else has come
```

Page 358

1    in that was given to me earlier.

2              MR. BLEAKLEY:  Your Honor, excuse me.

3    Sorry for interrupting.  But before you go on, there

4    was one exhibit that was being offered with

5    Dr. Ilingworth to which we objected, and that was

6    Exhibit Number 2.

7              THE COURT:  Where is the reference to it

8    in the deposition?

9              MR. BLEAKLEY:  That's a good question.

10             THE COURT:  Is it in a portion that I

11   have -- there's testimony regarding Exhibit 2 which

12   is not objected to.  Is there some reason why I

13   would not admit that into evidence?

14             MR. BLEAKLEY:  Yes, Your Honor.  Our

15   argument there is that the exhibit is on the same

16   basis as we have been objecting, that it is

17   cumulative on the PPH story.

18             THE COURT:  Okay.  Well, I have removed

19   some portions of the testimony of Mr. Ilingworth

20   towards the PPH issue, but not all of it.  Some of

21   it was included, and there are portions of the

22   deposition in which Exhibit 2 is referred to, to

23   which no objection has been raised to that

24   testimony.  So if that's the sole basis, I would

25   overrule the objection and allow its admission into